1
2
3
4
5
6
7                       UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   JUAN HERNANDEZ,                          No.  2:21-cv-0480 TLN DB P

11                  Plaintiff,

12         v.                                 FINDINGS AND RECOMMENDATIONS

13   P. BARAJAS, et al.,

14                  Defendants.

15

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

17   U.S.C. § 1983.  Plaintiff claims that defendants violated his Eighth Amendment rights.  Presently

18   before the court is defendants' fully briefed motion to dismiss and for partial summary judgment.

19   (ECF No. 39.)  For the reasons set forth below the court will recommend that the motion be

20   granted.

21                                  **BACKGROUND**

22   **I.        Relevant Procedural History**

23          Plaintiff initiated this action with the filing of the complaint on March 4, 2021.  (ECF No.

24   1.)  The undersigned screened and dismissed plaintiff's original complaint with leave to amend.

25   (ECF No. 9.)  Upon screening the amended complaint, the undersigned determined it stated

26   potentially cognizable excessive force and deliberate indifference claims against defendants

27   Barajas and Brunkhorst.  (ECF No. 17.)  Defendants filed a waiver of service (ECF No. 23) and

28   this action was referred to the court's Post-Screening ADR (Alternative Dispute Resolution)

                                             1

1    Project.  (ECF No. 24.)  Defendants moved to opt out (ECF No. 27), the motion was granted

2    (ECF No. 28), and defendants filed an answer (ECF No. 29).  The court issued a discovery and

3    scheduling order.  (ECF No. 31.)  Thereafter, defendants filed the instant motion to dismiss and

4    for partial summary judgment.  (ECF No. 39.)  Plaintiff has filed an opposition (ECF No. 44) and

5    defendants have filed a reply (ECF No. 45).

6    **II.**      **Allegations in the Operative Complaint**

7         The allegations giving rise to the claim occurred while plaintiff was an inmate in the

8    California Department of Corrections and Rehabilitation ("CDCR") housed at Mule Creek State

9    Prison ("MCSP").  (ECF No. 16 at 1.)  He has identified MCSP correctional officer Barajas and

10    MCSP sergeant Brunkhorst as defendants in this action.  (Id. at 1, 2, 7.)

11         Plaintiff alleges that on March 12, 2019, he was standing inside his cell waiting to be let

12    out when officer Barajas walked past his cell without opening the door.  (Id. at 7.)  Plaintiff began

13    flashing his light on and off while waving to get Barajas' attention.  Barajas continued releasing

14    other inmates from their cells.  Plaintiff attempted to have another inmate stand in front of his cell

15    so that Barajas would realize he had not released plaintiff from his cell.  (Id. at 7-8.)

16         Barajas used the building intercom and said, "I don't need you to get my fucking

17    attention, shut up and wait."  (Id. at 8.)  Plaintiff waited five minutes, then yelled to be released.

18    Plaintiff yelled three more times before Barajas released him.

19         After he was released, plaintiff approached the building tower to speak with Barajas.  (Id.

20    Barajas opened the tower window and yelled down at plaintiff, "this better not be about your

21    fucking dayroom."  Plaintiff inquired about the source of the issue.  Barajas said, "stop acting like

22    a little bitch, your [sic] out here now ain't you. Believe me, if I had a problem with your stupid

23    ass, you would know it, now get away from the tower and go enjoy the dayroom you were crying

24    to get to."  Plaintiff told Barajas he had no reason to talk to him like that.  Barajas said, "fuck

25    you" and slammed the tower window.  Plaintiff yelled, "fuck you too," and was about to walk

26    away when Barajas returned to the window and said, "we'll see who does the fucking in this

27    building dumb ass."

28    ////

Plaintiff was approached by an inmate he did not know.  (Id. at 9.)  The inmate stated he heard what had just occurred and that Barajas was "a dirty player" when it came to beef with inmates.  He further stated that Barajas was "a dirty player" when it came to beef with inmates.  He further stated that Barajas "liked to provoke inmates into confrontations so that he and his co-workers like him, could get you handcuffed, then dump you really hard, beat you up bad, then give you a write up for a battery on staff."

Plaintiff observed an inmate talking with Barajas.  After the conversation, plaintiff walked over to a table to wait for a shower.  As plaintiff was walking toward the shower, he was attacked from behind.  Three other inmates jumped in to assist plaintiff.  He heard loud commands from officers to stop fighting and get on the ground.  Plaintiff immediately complied with officers' commands.  (Id. at 10.)  Plaintiff heard the sound of a 40 mm[1] round being fired and watched it miss the group of inmates still fighting.  It landed about 10 feet away and continued to bounce.  Officer Tappan threw an oleoresin capsicum ("OC") grenade toward the fighting inmates that exploded about five feet away from the inmates.

Plaintiff looked up and watched Barajas look directly at him, aim his 40 mm launcher at him, and shoot.  (Id.)  The round struck plaintiff in his forehead above his left eye.  As plaintiff was lying on the floor, he realized that the inmate who attacked him was the same individual he observed speaking with Barajas.

Officer Ellis asked plaintiff if he was able to walk to medical.  Plaintiff told Ellis his head hurt, and he was feeling dizzy.  (Id. at 10-11.)  Ellis used his radio to request a gurney.  (Id. at 11.)  Brunkhorst came into the building and asked Ellis why plaintiff was still in the building and not at medical or in a holding cell.  Ellis told him it was because plaintiff had been struck in the head with a 40 mm round, was bleeding and dizzy, and did not think he could walk.

Brunkhorst looked at plaintiff and stated, "that's not a 40 mm wound, that looks loke [sic] a fist did that, so get your ass up and walk to medical or we will drag you."  (Id.)  Plaintiff tried to tell him what happened, but Brunkhorst cut him off and told him to walk to medical.  Ellis

---

[1] A 40 mm round is a less-lethal weapon "made of dense foam or rubbber."  Campbell v. Santa Cruz County, No. 14-cv-0847 EJD, 2016 WL 6822081, at *5 (N.D. Cal. Nov. 18, 2016); see also Cal. Code Regs., tit. 15 § 3268(c)(4).

assisted plaintiff over to medical. During the walk, plaintiff fell twice and began to fall a third time but was caught by Ellis.

Plaintiff was seen by a doctor and received 5 stitches while waiting to be transported to an outside hospital. (Id.) While waiting plaintiff asked Ellis why Brunkhorst said the wound was not from a 40 mm round and why Brunkhorst would not let plaintiff wait for a gurney. (Id. at 12.) Ellis told plaintiff Brunkhorst was trying to help Barajas, but they knew his injury was from a 40 mm round.

Plaintiff was treated at Sutter Amador Hospital and discharged back to prison that night. (Id.) The following morning, he was sent back to medical, then to Kaiser Permanente Trauma. Plaintiff received more scans, was informed the scans showed a little bleeding, and was told it would stop on its own.

The following morning plaintiff saw the inmates who helped him the previous day. After plaintiff thanked inmate Guevara for helping him the previous day, Guevara told plaintiff they watched inmate Cruz return to the unit "after talking to defendant Barajas for to[o] long . . . and watched defendant Barajas nod at inmate Cruz in plaintiff's direction." (Id.) Guevara also told plaintiff that while they were in the holding cells, Cruz told them that Barajas asked Cruz "to get off on plaintiff" in exchange for a radio.

## MOTION FOR SUMMARY JUDGMENT

### I.      The Parties Briefing

#### A.  Defendant's Arguments

Defendants argue that they are entitled to partial summary judgment because plaintiff only submitted one appeal related to the allegations in the complaint and that appeal described only Barajas' alleged excessive use of force. (ECF No. 30 at 5-6.)

#### B.  Plaintiff's Opposition

Plaintiff alleges that he filed a grievance, log No. MCSP-19-01160, about the incident. (ECF No. 44 at 5.) He states that he was interviewed regarding the grievance and during the interview he was given the opportunity to present additional information. (Id.) He explained "what defendant Brunkhorst did on the date of 3-12-2019 in response to [his] medical needs."

4

1   (Id. at 5-6.)  He was told the inquiry would be complete and all issues were adequately addressed.

2   (Id. at 6.)  Thus, he claims that he had been reliably informed by an administrator that no further

3   remedies were available.  (Id.)

4   **II.     Legal Standards**

5   **A.  Motions for Summary Judgment under Rule 56**

6        Summary judgment is appropriate when the moving party "shows that there is no genuine

7   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

8   Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party bears the burden of

9   proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d

10  376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving

11  party may accomplish this by "citing to particular parts of materials in the record, including

12  depositions, documents, electronically stored information, affidavits or declarations, stipulations

13  (including those made for purposes of the motion only), admissions, interrogatory answers, or

14  other materials" or by showing that such materials "do not establish the absence or presence of a

15  genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

16  Fed. R. Civ. P. 56(c)(1).

17       "Where the non-moving party bears the burden of proof at trial, the moving party need

18  only prove there is an absence of evidence to support the non-moving party's case."  Oracle

19  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

20  Indeed, summary judgment should be entered, "after adequate time for discovery and upon

21  motion, against a party who fails to make a showing sufficient to establish the existence of an

22  element essential to that party's case, and on which that party will bear the burden of proof at

23  trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

24  of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such

25  a circumstance, summary judgment should "be granted so long as whatever is before the district

26  court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

27  56(c), is satisfied."  Id.

28  ////

5

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences.  "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' to the jury."  Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would

1   entitle him to a directed verdict if the evidence went uncontroverted at trial.  See Houghton v.

2   South, 965 F.2d 1532, 1536 (9th Cir. 1992).  The failure to exhaust administrative remedies is an

3   affirmative defense that must be raised in a motion for summary judgment rather than a motion to

4   dismiss.  See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  On a motion for

5   summary judgment for non-exhaustion, the defendant has the initial burden to prove "that there

6   was an available administrative remedy, and that the prisoner did not exhaust that available

7   remedy."  Id. at 1172.  If the defendant carries that burden, the "burden shifts to the prisoner to

8   come forward with evidence showing that there is something in his particular case that made the

9   existing and generally available administrative remedies effectively unavailable to him."  Id.  The

10  ultimate burden of proof remains with the defendant, however.  Id.  If material facts are disputed,

11  summary judgment should be denied, and the "judge rather than a jury should determine the

12  facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury

13  decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

14              **B.  Exhaustion of Administrative Remedies**

15              Because plaintiff is a prisoner challenging the conditions of his confinement, his claims

16  are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  The PLRA

17  mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 .

18  . . or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility

19  until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The

20  exhaust requirement "applies to all inmate suits about prison life, whether they involve general

21  circumstances or particular episodes, and whether they allege excessive force or some other

22  wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

23              Regardless of the relief sought, a prisoner must purse an appeal through all levels of a

24  prison's grievance process as long as some remedy remains available.  "The obligation to exhaust

25  'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer

26  the case, then there are no 'remedies . . . available,' and the prison need not further pursue the

27  grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis and alteration in

28  original) (citing Booth v. Churner, 532 U.S. 731, 736 (2001)).

7

1    "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of

2    administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust

3    unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016) (brackets in original).  In discussing

4    availability in Ross the Supreme Court identified three circumstances in which administrative

5    remedies were unavailable: (1) where an administrative remedy "operates as a simple dead end"

6    in which officers are "unable or consistently unwilling to provide any relief to aggrieved

7    inmates;" (2) where an administrative scheme is "incapable of use" because "no ordinary prisoner

8    can discern or navigate it;" and (3) where "prison administrators thwart inmates from taking

9    advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at

10   643-44.  "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an

11   inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Id. at 639.

12   "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes,

13   foreclosing judicial discretion." Id.

14       "[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S.

15   199, 216 (2007).  It is the defendant's burden "to prove that there was an available administrative

16   remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th

17   Cir. 1996)).  The burden then "shifts to the prisoner to come forward with evidence showing that

18   there is something in his particular case that made the existing and generally available

19   administrative remedies unavailable to him." Id.

20       A prisoner is required to exhaust administrative remedies before filing suit. McKinney v.

21   Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam).  Section 1997e(a) mandates that "[n]o

22   action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted.  42

23   U.S.C. § 1997e(a).  "The 'available' 'remed[y]' must be 'exhausted' before a complaint under §

24   1983 may be entertained." Booth, 532 U.S. at 738.  "Exhaustion subsequent to the filing of suit

25   will not suffice." McKinney, 311 F.3d at 1199.

26                          **1.  California's Inmate Appeal Process**

27       "The California prison system's requirements 'define the boundaries of proper

28   exhaustion." Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting Jones, 549 U.S.

at 218).  California prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  During the time relevant to this action,[2] inmates in California proceeded through three levels of appeals to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and rehabilitation ("CDCR").  Cal. Code Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level may be bypassed.  Id.  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id., § 3084.7(d)(3).  However, a cancellation or rejection decision does not exhaust administrative remedies.  Id., § 3084.1(b).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennet v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(3).  Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and they must "describe the specific issue under appeal and the relief requested."  Id. § 3084.6(b)(8).

An inmate has thirty calendar days to submit their grievance from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed."  Cal. Code Regs. tit. 15, § 3084.8(b).

### III.   Material Facts

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a).  (ECF No. 39-1.)  Plaintiff's opposition fails to comply with Local Rule 260(b).  (ECF No. 44.)  Rule 260(b) requires that a party opposing a motion for summary judgment "reproduce

---

[2] In 2020, California changed the grievance system from a three-tier system to a two-tier system. The change became effective on June 1, 2020, after plaintiff initiated the grievance in the present case.  See Cal. Code Regs. tit. 15, § 3480.  All citations to the California code in the text refer to the prior law.

1  the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed

2  and deny those that are disputed, including with each denial a citation to the particular portions of

3  any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied

4  upon in support of that denial."

5  The court is mindful of the Ninth Circuit's instruction that district courts are to "construe

6  liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary

7  judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly,

8  the court considers the record before it in its entirety despite plaintiff's failure to be in strict

9  compliance with the applicable rules. However, only those assertions in the opposition that have

10  evidentiary support in the record will be considered.

11  During the relevant time period, CDCR had a grievance procedure in effect at that time

12  governed by the California Code of Regulations, Title 15, § 3084.1(a) which stated that an inmate

13  "may appeal any departmental decision, action, condition, or policy which they can demonstrate

14  as having a material effect upon their welfare." (DSUF (ECF No. 39-1) at ¶ 1.) Inmates were

15  required to submit an appeal within thirty days of the occurrence of the event being appealed.

16  (DSUF (ECF No. 39-1) at ¶ 2; Cal. Code Regs., tit. 15, § 3084.8(b).) Inmates were also required

17  to "list all staff member(s) involved" in the incident and "all fact known and available . . .

18  regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form."

19  (DSUF (ECF No. 39-1) at ¶ 3; Cal. Code Regs., tit. 15, § 3084.2(a)(3).)

20  The events giving rise to plaintiff's claim occurred on March 12, 2019. (DSUF (ECF No.

21  39-1) at ¶ 1, 6.) On that date, plaintiff and five other inmates were involved in a fight in the

22  dayroom at MCSP. (DSUF (ECF No. 39-1) at ¶ 6.) Plaintiff was hit in the head by a sponge

23  round from a 40 mm launcher. (DSUF (ECF No. 39-1) at ¶ 6.) Defendant Brunkhorst entered the

24  area after the fight ended and upon receiving an alert that an inmate claimed he had been shot in

25  the head. (DSUF (ECF No. 39-1) at ¶ 7.)

26  On March 15, 2019, plaintiff submitted a grievance stating he was in a fight, he

27  complied with officers' order to "get down," and an officer "Parrish" shot him in the head with a

28  sponge round fired by a 40 mm launcher. (DSUF (ECF No. 39-1) at ¶ 8.) Plaintiff requested an

investigation into the use of force.  (DSUF (ECF No. 39-1) at ¶ 9.)  The grievance was given log number MCSP-A-19-01160 by MCSP.  (ECF No. 16 at 18.)

MCSP bypassed the first level of review of plaintiff's appeal.  (DSUF (ECF No. 39-1) at ¶ 10.)  Second level review was completed by MCSP on April 30, 2019.  (DSUF (ECF No. 39-1) at ¶ 10.)  The findings at the second level of review determined that the officer who fired the shots acted pursuant to CDCR policy.  (DSUF (ECF No. 39-1) at ¶ 10.)

Plaintiff submitted the appeal for third-level review on May 2, 2019.  (DSUF (ECF No. 39-1) at ¶ 11.)  Plaintiff argued that the use of force was unnecessary and it is "always a violation to shoot someone in the head."  (DSUF (ECF No. 39-1) at ¶ 11.)  The appeal was denied at the third level of review.  (DSUF (ECF No. 39-1) at ¶ 11.)

Plaintiff's original complaint was filed on the docket on March 15, 2021.  (DSUF (ECF No. 39-1) at ¶ 12.)  The complaint includes allegations that Brunkhorst refused to allow plaintiff to be transported to the medical unit by gurney and that he almost fell several times along the way.  (DSUF (ECF No. 39-1) at ¶ 13.)  Plaintiff acknowledged under oath at his deposition that the appeal did not mention Brunkhorst or a gurney.  (DSUF (ECF No. 39-1) at ¶ 14.)

Plaintiff submitted six inmate appeals while incarcerated at MCSP.  (DSUF (ECF No. 39-1) at ¶ 15.)  None of the grievances filed between March 12, 2019, the date of the incident, and the filing of the original complaint address plaintiff's claim against defendant Brunkhorst, lack of gurney transport, or injuries suffered because he was forced to walk to medical.  (DSUF (ECF No. 39-1) at ¶ 17.)

**IV.    Analysis**

Defendants argue they are entitled to summary judgment on plaintiff's deliberate indifference claim against defendant Brunkhorst because plaintiff failed to include allegations relative to this claim in the sole grievance filed about the events giving rise to the claim.  (ECF No. 39 at 5-6.)  Plaintiff opposes the motion arguing that he exhausted administrative remedies as to his deliberate indifference claim against Brunkhorst by raising those allegations during an interview related to the grievance he filed regarding defendant Barajas' excessive use of force.  (ECF No. 44 at 6.)  He further argues administrative remedies were unavailable because English

is his second language and based on misinformation he received during the grievance process. (Id. at 5-7.)

### A.  Specificity

Plaintiff alleges that he satisfied the grievance requirement because he verbally conveyed the allegations relative to defendant Brunkhorst during an interview regarding grievance log number MCSP-A-19-01160.  (ECF No. 44 at 5-7.)

A prisoner's failure to list all staff members involved in an incident in a grievance, or to fully describe the involvement of staff members in the incident, does not necessarily preclude exhaustion of administrative remedies.  Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); see also Franklin v. Foulk, No. 2:14-cv-0057 KJM DB, 2017 WL 784894, at *4-5 (E.D. Cal. Mar. 1, 2017).  However, for administrative remedies to be exhausted as to defendants not identified in the grievance, there must be a "sufficient connection" between the claim in the appeal and the unidentified defendants such that prison officials can be said to have had "notice of the alleged deprivation" and an "opportunity to resolve it."  Reyes, 810 F.3d at 659 (finding plaintiff had exhausted claim that he was improperly denied pain medication where he had filed a grievance challenging the decision of Pain Management Committee and defendant doctors were members of that committee).

If there is not a sufficient connection between the claim alleged in the grievance and the unidentified defendants, then the claim is not exhausted as to the unidentified defendant.  See e.g., Griffin v. Arpaio, 557 F.3d 1117, 1118-21 (9th Cir. 2009) (finding plaintiff had not exhausted claim that prison officials disregarded an order assigning him to a lower bunk where he filed a grievance requesting a ladder to access his top bunk); Sapp v. Kimbrel, 623 F.3d 813, 824 (9th Cir. 2010) (finding plaintiff's grievance regarding inadequate medical treatment for his eye condition did not exhaust claims that he was denied access to his medical records or claim that his grievances requesting medical care were improperly screened out)

Additionally, failing to name individual defendants, even if added at the second or third level of review, is not sufficient to exhaust as to those defendants.  See Ethridge v. Rodriguez, No. 1:12-cv-2088 AWI SAB PC, 2015 WL 13237012, at *7 (E.D. Cal. Nov. 13, 2015)

1   ("Administrative remedies are not exhausted as to any new issue, information or person later

2   named by the appellant prisoner that was not included in the originally submitted CDCR Form

3   602 and addressed through all levels of administrative review up to and including the third

4   level.").  Because plaintiff failed to include allegations related to defendant Brunkhorst he did not

5   put prison officials on notice of his claim against this defendant.

6        Here, the only grievance plaintiff filed contained allegations contained in the complaint is

7   grievance log number MCSP-A-19-01160.  (ECF No. 39 at 4; ECF No. 39-1 at 3; ECF No. 16 at

8   18-21.)  Grievance log number MCSP-A-19-01160, solely concerned plaintiff's allegations that

9   officers used excessive force following the inmate altercation.  (ECF No. 16 at 18-21; ECF No.

10  39-6 at 13-16.)  Grievance log number MCSP-A-19-01160 did not include allegations that

11  defendant Brunkhorst's actions interfered with plaintiff's ability to obtain timely and adequate

12  medical care at any level of review.  (ECF No. 39-6 at 11-59; ECF No. 16 at 18-21.)

13       Because plaintiff did not include allegations related to his deliberate indifference claim

14  against defendant Brunkhorst in grievance log number MCSP-A-19-01160, it did not exhaust that

15  claim.  See Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010) (finding grievance that complained

16  of visitation restrictions and did not mention an assault or that the visitation restriction was related

17  to the assault was insufficient to put prison officials on notice that staff conduct contributed to the

18  assault); O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1062 (9th Cir. 2007)

19  (grievance requesting lower bunk due to plaintiff's balance issues caused by previous brain injury

20  did not exhaust claim that prison deprived plaintiff of adequate mental health treatment);

21  McCollum v. Calif. Dept. of Corr. and Rehab., 647 F.3d 870, 876-77 (9th Cir. 2011) (grievance

22  addressing problems encountered by Wiccan inmates did not exhaust claim of religious

23  discrimination predicated on CDCR's failure to provide Wiccan chaplains); Rowland v. Beard,

24  No. 1:15-cv-01475 LJO BAM (PC), 2018 WL 4372795, at*4 (E.D. Cal. Sept. 12, 2018)

25  (grievance complaining of lack of hot water failed to put defendants on notice of plaintiff's claim

26  that his toilet was flooded and sewage was flowing into his cell).

27  ////

28  ////

B. **Explanation of Allegations During Interview not Sufficient to Exhaust**

Plaintiff alleges that he exhausted his claim because he verbally explained the allegations regarding defendant Brunkhorst's failure to adequately address his medical needs during an interview for grievance log number MCSP-A-19-01160.  (ECF No. 44 at 5-6.)  Specifically, he states that he was interviewed by non-party lieutenant Pasioles regarding grievance log number MCSP-A-19-01160.  (Id.)  However, verbally presenting his allegations during the interview is not sufficient to exhaust as to those allegations.  See Smith v. Mendoza, No. 19-03750 BLF (PR), 2021 WL 930706, at *9 (N.D. Cal. Mar. 10, 2021) (finding plaintiff failed to exhaust as to several defendants because the allegations against these defendants was presented during "the interview at the second level of review."); see also Cal. Code Regs. tit. 15, § 3084.1(b) ("Administrative remedies shall not be considered exhausted relative to any new issue . . . later named by the appellant that was not included in the originally submitted CDCR Form 602 . . . and addressed through all required levels of administrative review up to and including the third level.").

Additionally, defendants have included information showing that plaintiff received a summary written by Pasioles of the allegations discussed during the interview.  (ECF No. 45 at 4.)  That summary did not include facts related to plaintiff's deliberate indifference claim against defendant Brunkhorst.  (Id.)  Defendants have further shown that plaintiff had the opportunity to correct the record when he appealed the second level response, but that he did not include information regarding his medical claim in his response.  (Id.)

To the extent plaintiff claims that he was unaware that he had to put such information in his grievance, his lack of knowledge is not sufficient to excuse him from the exhaustion requirement.  See Gurley v. Clark, 620 Fed. Appx. 671, 673 (10th Cir. 2015) ("Lack of knowledge of the exhaustion requirement does not excuse an inmate's failure to exhaust administrative procedures."); see also Ross, 578 U.S. at 642 (a reasonable misunderstanding of the prison's grievance procedure does not render the process "unavailable" for exhaustion purposes).

Finally, plaintiff argues that prison officials were aware of his deliberate indifference claim.  (ECF No. 44 at 8.)  That prison officials had been put on notice of his claims based on the

14

interview, such an allegation is insufficient to meet the PLRA's exhaustion requirement.
Woodford, 548 U.S. at 90-91 ("[P]roper exhaustion of administrative remedies is necessary," and
"demands compliance with an agencies . . . critical procedural rules . . . .")  The only exception
provided for by the PLRA is when administrative remedies are unavailable.  Ross, 578 U.S. at
648.  Accordingly, plaintiff's deliberate indifference claim against defendant Brunkhorst should
be dismissed unless plaintiff can show administrative remedies were unavailable to him.

### C. Language Barrier

Plaintiff argues that he should be excused from the exhaustion requirement because his
"first language is Spanish" and he struggles with speaking and understanding English.  (ECF No.
44 at 3.)  Defendants argue that plaintiff's allegation is contradicted by the record, assert he had
assistance from a fellow inmate when he filed the appeal, and that he communicated in "broken,
but adequate English," during the interview with Pasioles.  (ECF No. 45 at 2-3.)  Portions of the
deposition included with defendants' reply indicate that plaintiff is capable of understanding
English.  (ECF No. 45 at 9-20.)

The deposition excerpts provided and plaintiff's filings in this action do not support a
finding that plaintiff's difficulty understanding English made administrative remedies
unavailable.  See Segura v. Mcdonald, No. 2:13-cv-0393 AC P, 2015 WL 7769687 at *9 (E.D.
Cal. Dec. 3, 2015) (finding plaintiff's illiteracy and inability to speak English did not excuse
obligation to exhaust administrative remedies); Mendez v. Sullivan, 488 Fed. Appx. 566, 568 (3d
Cir. 2012) (language barrier did not make administrative remedies unavailable); Martinez v.
Fields, 627 Fed.Appx. 573, 574 (8th Cir. 2015) (finding defendant failed to meet burden of
showing that administrative remedies were available where plaintiff did not speak English and
forms were not available in Spanish).  Accordingly, administrative remedies were not rendered
unavailable based on plaintiff's language barrier.

### D. Administrative Remedies were not Unavailable due to Misinformation

Plaintiff next argues that administrative remedies were unavailable because he received
misinformation from non-party lieutenant Pasioles.  (ECF No. 44 at 5.)  He alleges that he
verbally explained "what Brunkhorst did on the date of 3-12-2019 in response to [his] medical

needs" during an interview for grievance log number MCSP-A-19-01160.  (Id. at 5-6.)  After

plaintiff conveyed the allegations regarding defendant Brunkhorst, Pasioles "explained to [him]

that his inquiry would be 'complete,' and 'all' issues adequately addressed."  (Id. at 6.)  Plaintiff

further states, Pasioles assured him that his allegations regarding Brunkhorst's response to his

medical needs was being investigated.  (Id. at 31.)

   The cases cited by plaintiff in support of his argument that Pasioles misinformed him of

the need to exhaust involve instances in which prisoners were told no further remedies were

available or that they could not pursue an appeal any further.  See Brown v. Valoff, 422 F.3d 926,

937 (9th Cir. 2005) (holding plaintiff had exhausted because he was not informed that further

review was available to him following the second level response); Hendon v. Ramsey, No.

06CV1060 J(NLS), 2007 WL 1120375, at *9-10 (S.D. Cal. Apr. 12, 2007) (finding plaintiff

exhausted because second level response did not advise plaintiff that any further review was

available); Cahill v. Arpaio, No. CV 05-0741 PHX MHM (JCG), 2006 WL 3201018, at *3 (D.

Ariz. Nov. 2, 2006) (finding plaintiff had no reason to believe that he could secure any further

relief after the hearing officer told him (1) the matter was under investigation and he would not be

notified of the results, (2) he could not appeal and would not be given an appeal form, and (3) he

should file a case in federal court); Candler v. Woodford, No. C 04-5453 MMC (PR), 2007 WL

3232435, at *5 (N.D. Cal. Nov. 1, 2007) (finding plaintiff had exhausted where he was advised

by the appeals coordinator that he could not appeal the second-level decision to the third level of

review.).

   "[A]n administrative remedy is not available if 'prison officials inform the prisoner that he

cannot file a grievance . . . ."  Williams v. Paramo, 775 F.3d 1182, 1192 (9th Cir. 2015) (citing

Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005).  Plaintiff has not put forward allegations

indicating that he was told no further administrative remedies were available.  Rather, plaintiff

submitted grievance log number MCSP-A-19-01160 for third level review.  (ECF No. 44 at 6.)

Thus, he was not prevented from pursuing the appeal after the interview with Pasioles.

   While plaintiff may have misconstrued the information given to him by Pasioles during

the interview, bad advice does not make administrative remedies unavailable.  See Johnson v.

Dhaliwal, No. CV 21-6526 SB (AS), 2023 WL 2483483 at *7 (C.D. Cal. Feb. 13, 2023) (finding misinformation "about the prerequisites to filing" a claim was "not a valid basis to excuse [the plaintiff's] failure to pursue all available administrative remedies"); Thomas v. New York State Dept. of Correctional Services, No. 00 Civ. 7163(NRB), 2003 WL 22671540, at *4 (S.D. New York Nov. 10, 2003) ("[Plaintiff] was told that it was not necessary for him to file a grievance, there is no evidence that he was told that he could not file a grievance. Thus, the instructions are properly understood as bad advice, not prevention or obstruction.").

The undersigned finds that plaintiff has not shown that prison officials "thwart[ed] him from taking advantage of the grievance process, or that the administrative rules governing the process were "so opaque" or confusing that no "ordinary prisoner" in his situation could be expected to make use of it.  See Ross, 578 U.S. at 643-44.  Accordingly, administrative remedies were not unavailable and defendants' motion for partial summary judgment should be granted.

<strong>MOTION TO DISMISS</strong>

**I.      The Parties' Briefing**

      **A.  Defendants' Motion**

Defendants move to dismiss plaintiff's declaratory relief and official capacity claims should be dismissed for failure to state a claim.  (ECF No. 39 at 7-8.)

      **B.  Plaintiff's Opposition**

Plaintiff does not address defendants' arguments in favor of dismissal of his declaratory and official capacity claims in his opposition.  (ECF No. 44.)

**II.      Legal Standards on Motions to Dismiss under Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The court must accept as true the allegations of the complaint,

17

1  Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and construe the pleading

2  in the light most favorable to plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  A pro se

3  complaint must contain more than "naked assertion[s]," "labels and conclusions," or "a formulaic

4  recitation of the elements of a cause of action, supported by mere conclusory statements."  Iqbal,

5  556 U.S. at 678.

6       A motion to dismiss for failure to state a claim should not be granted unless it appears

7  beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

8  entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v.

9  Gibson, 355 U.S. 41, 45-46 (1957)).  Pro se pleadings are held to a less stringent standard than

10 those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).  The court

11 must give a pro se litigant leave to amend his complaint "unless it determines that the pleading

12 could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122,

13 1127 (9th Cir. 2000) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).  However,

14 the court's liberal interpretation of a pro se complaint may not supply essential elements of the

15 claim that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir.

16 1982).  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may 'generally

17 consider only allegations contained in the pleadings, exhibits attached to the complaint, and

18 matters properly subject to judicial notice.'"  Outdoor Media Grp., Inc. v. City of Beaumont, 506

19 F.3d 895, 899 (9th Cir. 2007) (citing Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007)).

20    **III.   Analysis**

21       **A. Declaratory Relief Claim**

22       Defendants argue that plaintiff's declaratory relief claim is moot because he has been

23 transferred away from MCSP[3] and there is no indication he will return.  (ECF No. 39 at 7.)  They

24

25 [3] CDCR's inmate locator system located at http://inmatelocator.cdcr.ca.gov reflects that plaintiff
   is presently housed at Kern Valley State Prison.  The court may take judicial notice of
26 information stored on the California Department of Corrections and Rehabilitation inmate locator
   website.  See In re Yahoo Mail Litig., 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014) (a court may
27 take judicial notice of information on "publicly accessible websites" not subject to reasonable
   dispute); Louis v. McCormick &Schmick Restaurant Corp., 460 F. Supp. 2d 1153, 1155 fn.4
28 (C.D. Cal. 2006) (court may take judicial notice of state agency records).

1    allege that a transfer generally moots a declaratory relief claim regarding the policies and

2    practices at the prior institution.  (Id.)  Plaintiff does not appear to address defendants' argument

3    that his declaratory relief claim is moot in light of his transfer in his opposition.  (ECF No. 44.)

4         The undersigned concurs with defendants that plaintiff's transfer out of MCSP renders his

5    declaratory relief claim moot.  See Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015)

6    (inmate's release from prison renders claim for injunctive relief moot); Alvarez v. Hill, 667 F.3d

7    1061, 1064 (9th Cir. 2012) (where an inmate is no longer subject to the challenged prison

8    conditions or policies claims seeking declaratory relief are rendered moot); Moore v. McMahon,

9    2018 WL 5863018 at *8 (C.D. Cal. Aug. 6, 2018) (plaintiff's transfer from detention to prison

10   facility rendered any claim for declaratory or injunctive relief moot).

11        Because plaintiff has been transferred and there is no indication that he will be returned to

12   MCSP, the undersigned will recommend that plaintiff's declaratory relief claim be dismissed.

13              **B.  Official Capacity Claim**

14        Defendants argue plaintiff's claim for damages against defendants in their official

15   capacity should be dismissed because they are barred pursuant to the Eleventh Amendment.

16   (ECF No. 39 at 7-8.)  Plaintiff has not addressed defendants' argument that his official capacity

17   claims should be dismissed.  (ECF No. 44.)

18        "Suits against state officials in their official capacity therefore should be treated as suits

19   against the State."  Hartmann v. California Dept. of Corr. and Rehab., 707 F.3d 1114, 1127 (9th

20   Cir. 2013) (citations and quotations omitted).  The Eleventh Amendment bars suits for money

21   damages in federal court against state officials in their official capacity.  Aholelei v. Department

22   of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

23        Plaintiff's claims against defendants in their official capacity should be dismissed because

24   they are barred by the Eleventh Amendment.  Cox v. Kernan, No. 2:19-cv-01637 JAM DAD,

25   2021 WL 3783911 (E.D. Cal. Aug. 26, 2021) (citing Aholelei, 488 F.3d at 1147) (noting

26   plaintiff's official capacity claim for damages against defendant correctional official is barred by

27   the Eleventh Amendment).  Plaintiff's failure to argue against dismissal of his official capacity

28   claim further supports dismissal of his official capacity claim.  Mitchell v. Rodriguez, No. 1:22-

1    cv-0006 JLT EPG (PC), 2023 WL 1803844, at *1 (E.D. Cal. Feb. 7, 2023) (dismissing official

2    capacity claim against prison official based on plaintiff's lack of opposition).

3                                **CONCLUSION**

4        For the reasons set forth above, IT IS HEREBY RECOMMENDED that defendants'

5    motion to dismiss and for partial summary judgment (ECF No. 39) be granted.

6        These findings and recommendations are submitted to the United States District Judge

7    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty (30) days

8    after being served with these findings and recommendations, any party may file written

9    objections with the court and serve a copy on all parties.  Such a document should be captioned

10   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

11   objections shall be served and filed within fourteen (14) days after service of the objections.  The

12   parties are advised that failure to file objections within the specified time may waive the right to

13   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14   Dated:  July 16, 2023

15

16

17                         DEBORAH BARNES

                          UNITED STATES MAGISTRATE JUDGE

18

19

20

21   DB:12

22   DB/DB Prisoner Inbox/Civil Rights/S/hern0480.mtd&msj fr

23

24

25

26

27

28